## SUCESION DE FRANCISCO DE LOS REYES CORREA, Plffs.,

*v.*

## E. MURRAY BRUNER, Dft.

San Juan, Law, No. 1472.

Opinion filed June 19, 1923.

*Mr. Willis Sweet* for plaintiffs.

*Mr. Ira K. Wells* for defendant.

ODLIN, Judge, delivered the following opinion:

Although there has been a long and exhaustive trial of this case, and the same has been elaborately argued both orally and by carefully prepared briefs, the case really lies within a very narrow compass. A jury trial was waived, and the court has considered carefully all matters submitted by the respective parties.

The third amended complaint was filed July 14, 1922, followed by an answer which comprises a mere denial, general and specific, of every allegation set forth in the said third amended complaint. Therefore it is clear that the burden of proof was upon the plaintiffs to establish by a preponderance of evidence all the material allegations contained in the said third amended complaint.

These allegations, stated in as condensed form as possible, are as follows: It is alleged that the numerous persons named as plaintiffs are the heirs of Francisco de los Reyes Correa, so far as they are known, and they sue E. Murray Bruner in their own behalf and also on behalf of those heirs that are unknown. And it is alleged that all the plaintiffs, so far as their identity is known, reside within the Island of Porto Rico; it is further alleged that the defendant has his domicil in the state of Kentucky, but that he is temporarily sojourning in the Island of Porto Rico. This is one of the allegations necessary in order to give this court jurisdiction. The plaintiffs did

clearly prove that the plaintiffs who are named reside in the Island of Porto Rico, but there was no proof whatever that the said defendant has his domicil in the state of Kentucky. There was evidence tending to show that the defendant is in the Island of Porto Rico because he was sent here by the United States government, and the defendant himself admitted that he might be sent outside the Island of Porto Rico at any time under the orders of the United States government, but the testimony is silent as to the domicil of the defendant. There therefore is great doubt in my mind, in view of the general denial in the answer, whether I have jurisdiction of this case, because there is an absence of proof as to where the defendant has his domicil, although there is abundant proof with respect to the domicil of the plaintiffs whose names are given.

There then follows an allegation that the said heirs constituting the succession of Francisco de los Reyes Correa, in other words the plaintiffs, are owners in fee simple of certain lands described in said third amended complaint. The description of these lands comprises two pages and a half in the third amended complaint, and I do not think it necessary to copy the description into this opinion, but I shall have occasion hereafter to refer to the description. It is alleged in the closing part of paragraph 2 that the area of land claimed by these plaintiffs is 6,085 cuerdas and a fraction.

The third paragraph alleges that in or about the year 1915 the said succession, having become the owners of the said land by virtue of a grant from the Crown of Spain to the ancestor, Francisco de los Reyes Correa, had the right of possession thereof under the guaranty of the Treaty of Paris which was proclaimed April 11, 1899, between the Crown of Spain and the

United States government; and then follows the allegation that the defendant entered into possession of said lands and is now in possession thereof.

The fourth allegation of the complaint is that the land is of the approximate value of $100,000.

The fifth and closing paragraph of the complaint is that the said succession has from time to time exercised dominion over said lands, but that the defendant claims that he has the right and authority to exercise dominion and control of said lands and that he is exercising such dominion and is in possession thereof and is seeking to exclude the plaintiffs therefrom.

Then follows the prayer, which is most peculiar. The prayer is in the alternative. The plaintiffs pray the judgment of this court for the recovery of the land as described in the complaint, or as the evidence shows the true boundaries to be; and the complaint closes with the prayer that the boundary of the land of the plaintiffs be settled and determined by the court.

It will thus be seen that it is difficult to say, after studying this prayer, whether the proceeding belonged on the equity side of the court or on the law side of the court. Inasmuch, however, as the plaintiffs admit that they are now out of possession and that the defendant is in possession, the court tried this case as if it were one in the nature of an action of ejectment, although a jury trial was waived.

Touching for a moment upon the fourth paragraph of the complaint, which sets forth simply that the land is of the approximate value of $100,000, the denial by the defendant of this paragraph did not require the plaintiffs to prove that the land was worth $100,000, but it did require the plaintiffs to prove that the land was worth more than $3,000 in order

to give this court jurisdiction. There is not one word of testimony in this case upon the subject of the value of the land. Counsel for the plaintiffs in his very elaborate brief has ingeniously argued that this court should take judicial notice of the fact that 6,085 cuerdas of land in the Island of Porto Rico must necessarily be worth more than $3,000; because if this land was worth only $2,981, its value would be about 49 cents per acre, and it is argued that it would be ridiculous for this court to hold that forest lands could possibly have a value anywhere near as low as that sum. I am obliged to hold, however, that I cannot take judicial knowledge that these lands are worth over $3,000. I admit that it is very probable that they are worth very much more than $3,000, but in the absence of all proof upon that question I cannot bring myself to declare that the value exceeds 49 cents an acre. It happens that I am very familiar with the history of the so-called Disston land sale in the state of Florida in which the state itself transferred some forty years ago to Hamilton Disston 4,000,000 acres of excellent land in Florida for $1,000,000, which, of course, is at the rate of 25 cents per acre. It also happens that this court is very familiar with the details of a transaction which took place in Florida about thirty-five years ago, in which the state of Florida, being indebted to a very able lawyer named John A. Henderson in the sum of $20,000, made a contract with the latter by which there were conveyed to him in cancelation of said indebtedness 100,000 acres of very fine land in the state of Florida, which of course is at the rate of 20 cents an acre. I therefore am obliged to hold that the proof in this case fails to show that this court has jurisdiction over this controversy.

Ordinarily, after reaching this conclusion, I would close this opinion and not discuss the merits of the case. In view, however, of a recent decision. of the Supreme .Court of the United States which was appealed from this court to that court, Mr. Justice Holmes, speaking for the Supreme Court, after holding that this court had no jurisdiction of the subject-matter of the controversy, and affirming the decision of this court which dismissed the bill, proceeded to discuss the subject-matter of the bill upon its merits. In view of this precedent, it seems to me that it may not be entirely out of order for this court to discuss the merits of the present controversy. Therefore I proceed to say, that, assuming that I am in error in regard to the points already established in this opinion and that this court actually has jurisdiction of the controversy, I would be obliged to find a verdict in favor of the defendant for the following reasons: First, the description of the land claimed by the plaintiffs as set forth in ¶ 2 of the complaint, while intended to be the same land referred to in a certain ancient survey hereinafter mentioned, does not conform thereto. In other words, the description of the lands as set forth in the complaint is not identical with the lands which are described in the survey which was introduced in evidence, and this ancient survey is in several respects so vague and indefinite as to make it impossible to identify the land intended to be embraced within the limits thereof. This ancient survey speaks of one line being carried from a definite point to a point on two hills. It is impossible to understand how there can be one point on two hills. In another part of this old survey there is a statement that the boundaries must be determined by imaginary lines. I therefore would be obliged to hold that even if there

were proven a Spanish grant attempting to describe lands in the exact language of the ancient survey, such grant would be void for uncertainty.

It is further quite evident that this feeling of vagueness existed in the minds of the plaintiffs themselves, because their prayer concludes with the request that the boundaries of the land be settled and determined by this court. It therefore seems to me that the plaintiffs themselves were estopped to claim that they are seeking in and by this proceeding to recover the possession of any definite tract or body of real estate.

In conclusion, I deem it proper to say that, even if these heirs now suing would have a right of possession of the land provided the boundaries thereof were definite, and that this right of possession would exist under the guaranties of the Treaty of Paris, provided their ancestor actually did hold a grant from the Crown of Spain, I have found it impossible to bring myself to believe that the evidence submitted to this court has been sufficient to establish the existence of such a grant. Counsel for the plaintiffs admits that there is no record of the grant in Porto Rico. Much testimony has been offered tending to show that such a grant was believed to exist, and there is no question of the good faith of these plaintiffs in asserting their own confidence that there was such a grant to their ancestor over one hundred and thirty-six years ago, but it is conceded that there is no record of it in Porto Rico, and it is admitted by counsel for the plaintiffs that no effort whatever was made by the plaintiffs to ascertain whether or not there was such a record of this grant among the archives of the Spanish government at Madrid. I therefore would be obliged to hold, in case I had jurisdiction over the merits of this controversy, that the

burden of proof being upon the plaintiffs to prove the existence of the alleged grant, they have failed so to do.

One word more. I have not been in the least influenced in reaching this decision by the fact that none of the plaintiffs have ever paid any taxes upon this land, in spite of the fact that they have claimed to be the true owners for many years. There is no evidence that the lands ever were assessed for taxes. There is no evidence that any of these lands ever were sold for unpaid taxes. Of course the plaintiffs could not pay taxes on lands unless they were assessed, and if the plaintiffs were the actual owners of the lands this court would not for one moment deprive them of the possession by their failure to pay taxes I wish to make it clear that I am deciding this case against the plaintiffs simply because I am forced to the conclusion that they have failed to prove every material allegation of the complaint.

The judgment of the court therefore is that the plaintiffs take nothing by this action, and that they pay the costs thereof.

To this finding and judgment counsel for the plaintiffs excepts.

Done and ordered in open court at San Juan, Porto Rico, this 19th day of June, 1923.